## D'ORIO v. STARTUP CANDY CO.

No. 4682.   Decided April 23, 1928.   Stipulation Remitted
April 26, 1928.   (266 P. 1037.)

*Foot & Dawson,* of Salt Lake City, for appellant.

*F. W. James,* of Salt Lake City, for respondent.

THURMAN, C. J.

The complaint alleges that on November 28, 1927, plaintiff sold to defendant, at its special instance and request, certain goods, wares, and merchandise of the reasonable value of $157.50, that the defendant promised to pay plaintiff the reasonable value thereof, and that the said sum of $157.50 is now due and owing to plaintiff from defendant. Plaintiff prays judgment accordingly.

Defendant by his amended answer admits that it purchased from the plaintiff the goods, wares, and merchandise as alleged in plaintiff's complaint, that the reasonable value thereof was as alleged, and that defendant promised to pay for the same. As an affirmative defense, defendant alleges that the merchandise so sold or attempted to be sold was for use, and to be used, for gambling or lottery, that the said use constitutes a lottery or a gift enterprise or a game of chance, in violation of section 8162 of the Laws

of Utah 1917 and the Constitution of Utah, and that therefore the consideration was illegal and void. Defendant prays that plaintiff take nothing by his complaint. Plaintiff replied, denying defendant's affirmative defense. The trial court sitting without a jury found in favor of the plaintiff. From the judgment entered, defendant appeals.

The parties litigant stipulated the facts. The court, after finding the purchase of the goods by defendant, the value thereof as alleged, and the promise of defendant to pay and its failure to pay, made the following findings which reflect the substance of the stipulation:

"That the said merchandise sold to the said defendant consisted of advertoshare game boards. That upon the face of each board there appears a regular standard checker board, and the squares used in the checker problem are numbered. Upon the board there are 300 or more holes perforated through the board, in each of which there is a small slip of paper, and upon the board is a list of 10 or more names, and opposite these names appears the color of the checkers, and after every color appear the numbers upon which these respective checkers are to be placed. The customer pays 10 cents to purchase one of the slips of paper. Upon this slip of paper appears one of the names which appear on the face of the board. That the customer then places the checkers upon the checker board, as is indicated after the name which appears upon his slip of paper. Then he is to move both colored checkers—the dark colored checkers to be moved first. If the customer can then move the checkers in such a way that the dark-colored checkers win over the light-colored checkers, the customer receives a prize. That the slips of paper which the customer has received are good and apply upon the purchase price of merchandise, which is advertised on the face of the board. That in all problems that appear upon the board, the dark-colored checkers can win if the player moves the checkers in the proper way. That in every problem, therefore, the dark-colored checkers can win over the light-colored checkers, if the person playing the game has sufficient skill as a checker player to move his checkers skillfully.

"If the player plays the game in good faith and has the dark-colored checkers win over the light-colored checkers, he receives one of the boxes of candy displayed with the board. There is to be displayed with the board a number of special boxes of candy for the purpose of advertising. The slips which the cus-

tomer has received are good for 10 cents credit on the purchase price of this special advertising candy displayed whether or not he solves the problem. If he solves the problem, as indicated above, playing in good faith, he is given an additional box of candy as a prize. For the reason that there is also displayed on the face of the board an advertisement of a checker booklet containing the solution of the problems on any board as well as a general treatment of the subject of checker playing, and because it is thus possible for any player to memorize any checker problem and be able to win it invariably, the merchant displaying the board reserves the right and option to give or withhold the prize upon the solution of the problem. This is necessary for his protection, and the player is given notice of this option before he pays the 10 cents. This option is so stated upon the face of the board. But in any event the slip received for 10 cents is good upon the purchase price of the candy and booklet advertised.

"That the element of skill clearly predominates in the game, and the element of chance is negligible. That the said game boards are not used for gambling or betting and are not a lottery, nor a gift enterprise, nor a game of chance. That the said game boards are a game of skill, and do not violate section 8162 or section 8153, Compiled Laws of Utah 1917, nor are they in violation of article 6, § 28, of the Constitution of Utah."

Compiled Laws of Utah, § 8162, relied on by appellant, in part reads as follows:

"Every person who deals or caries on, opens or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noir, rondo, or any game played with cards, dice, or any other device, for money, checks, credit, or any other representative of value shall be deemed guilty of a felony. * * *"

Appellant, in its brief, also refers to an ordinance of Provo City which prohibits the use of any device upon which money is staked or hazarded upon chance. The ordinance was not pleaded, but no objection is made thereto.

Many authorities are cited by appellant to the effect that an illegal consideration will not support a contract. It is not necessary to cite the authorities, as the proposition is elementary.

Was the operation and use of the instrumentality described in the findings a lottery, game of chance, or gift enterprise? This is the question presented by the briefs for our determination.

Compiled Laws of Utah 1917, § 8153, defines a lottery as follows:

"A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share, or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known."

As to a game of chance, it is said in 27 C. J. at page 968:

"It is a game determined entirely or in part by lot or mere luck, and in which judgment, practice, skill, or adroitness have honestly no office at all, or are thwarted by chance; a game in which hazard entirely predominates."

The passage from C. J., just quoted, was quoted with approval in *Utah Fair Association et al.* v. *Green et al.*, (Utah) 249 P. 1019. The same language, in part, is used in 12 R. C. L. at page 716. But the same author, on page 717, after illustrating by specific examples the distinction between games of chance and games of skill, says:

"But games of cards do not cease to be games of chance because they call for the exercise of skill by the players, nor do games of billiards cease to be games of skill because at times, especially in the case of tyros, their result is determined by some unforseen accident, usually called 'luck.' The test of the character of the game is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game."

See, also, 27 C. J. at page 969.

As to a gift enterprise, it is said in 4 Words and Phrases, First Series, at page 3091:

"In common parlance a gift enterprise is understood to be substantially a scheme for the division or distribution of * * * property to be determined by chance, amongst those who have taken shares in the scheme, and the phrase has attained such a notoriety as to justify a court in taking judicial notice of its meaning."

From the foregoing definitions of a lottery, game of chance, and gift enterprise, it appears that chance is an element, and, in order to constitute either one of them, as I read the authorities, "chance" is the dominating element.

As examples of games of chance, R. C. L., supra, mentions throwing dice and playing at cards, dealing with the face down. On the other hand, the same author mentions chess, checkers, billiards, and bowling as games of skill. The distinction is clear. The games referred to in section 8162 are undoubtedly games of chance. If the cards are fairly dealt, the most skillful player cannot tell in advance what kind of a hand he will draw. Equal uncertainty exists in throwing dice. In each of these games chance is the dominating element. Such, manifestly, is not the case in games of chess, checkers, billiards, bowling, and other games of skill. It was games of chance that the Legislature intended to prohibit by the enactment of section 8162. As we read their briefs, such is the understanding of counsel on both sides of the case. Counsel for each of the respective parties have industriously collated many cases in support of their respective contentions as to what constitutes a lottery, game of chance, or gift enterprise. As we read the stipulation of the parties, which is fairly reflected by the findings of the court, it is unnecessary to review the authorities cited. Most of them are referred to in the notes to the passages quoted from C. J. and R. C. L. supra, and are available to the reader.

From the arguments made by counsel for both parties, we deduce the conclusion that, if the use and operation of the instrumentality described in the stipulation constitutes a game of skill or a game in which skill is a dominating element, the judgment of the trial court should be affirmed. In this view of the question there is but one conclusion deducible, and that is that it is a game of skill. In fact, skill is not only the dominating element, but it appears that nothing whatever is left to chance. The customer or patron of the device plays the game alone. There are 300 holes, any one of which the player may select. These holes contain a slip of paper upon which is the name of a checker problem. There are ten problems which are described on the board. When the player selects a hole and punches out the slip of paper therein, he then knows the problem he has to solve. The slip of paper indicates how the checkers shall be placed on the checker board which is in front of the player. The checkers are divided into black and white. The player plays the black against the white and must win in order to solve the problem. In some of the problems an equal number of black and white checkers are played on the board; in others there are more of one kind than the other. From the limited number of checkers used in each problem and their location on the board it has the appearance of a game which has been partly played. Some of the problems are more difficult to solve than others. This cannot be determined until the player punches out the problem. For this reason it is contended by appellant that here is an element of chance. But it is stipulated by the parties that *"any of said games can be won if the person playing has sufficient skill as a checker player to move his checkers skillfully."* (Italics supplied.) That stipulation, in the opinion of the writer, effectually determines the nature of the game. It is unquestionably a game of skill by agreement of the parties without any element of chance as that term is understood by lexicographers and in cases decided by the courts. The fact that one player may be less skillful than another or that one of the games

may be more difficult than another does not make it a game of chance. If it can certainly be won by a skillful player it is not a game of chance. Checker playing is universally held by the authorities to be a game of skill. The fact that one of the players may be more skillful than the other does not alter the nature of the game. It is nevertheless a game of skill. We are of opinion that the use and operation of the instrumentality described in the stipulation and findings was not in violation of section 8162 of the statute, nor was it in violation of article 6, § 28, of the state Constitution, which provides:

"The Legislature shall not authorize any game of chance, lottery or gift enterprise under any pretense or for any purpose."

It is not contended here that any of the things enumerated in the excerpt above quoted have been authorized by the Legislature.

Judgment affirmed, with costs.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.