SHAW, P. J.
 

 Defendants were convicted on a charge of running a lottery, and they appeal. They were not the proprietors of the place where the acts forming the basis of the charge were committed, but merely employees. They rest their defense in part on the fact that the proprietors had a license from the city of Los Angeles to operate the particular game found by the jury to be a lottery. They testified that they knew of this license and in reliance on it supposed the game to be lawful. Hence, it is argued, they had no criminal intent. The license above mentioned was issued under a Los Angeles city ordinance which provides for licensing games of skill, and directs the police commission to determine whether the game to be conducted by an applicant for a license is a game of skill and, if they find it to b.e such, to issue a permit on which the license may be obtained.
 

 The argument upon this license is presented in several forms. It is said to constitute an entrapment. But an essential ingredient of that defense, as is held in the authority cited by defendants, is that the criminal design originated, not with the accused, but with officers of the state.
 
 (Sorrells
 
 v.
 
 United States,
 
 (1932) 287 U. S. 435 [53 Sup. Ct. 210, 77 L. Ed. 413, 86 A. L. R. 249].) There is nothing of the kind here.
 

 Next it is contended that by reason of defendants’ knowledge of the license they had no criminal intent. Their testimony on this point amounts to no more than saying that they did not know their acts were unlawful. But no such knowledge was necessary here. Section 320 of the Penal Code requires no specific intent as a part of the crime there denounced. It merely makes it a misdemeanor to contrive, prepare, set up, propose or draw a lottery, not even using the word “wilfully” or the word “unlawfully”. Those words appear in the complaint here, but they are merely surplusage and cannot add to the burden of proof of the prosecution. The word “wilfully”, if it had been used in the statute, would have implied simply a purpose or willingness to commit the act (which appeared here), not an intent to violate the law. (Pen. Code, sec. 7, subd, 1.) Even the
 
 *Supp. 785
 
 word “knowingly”, if present in the statute, would require only a knowledge that the facts exist which bring the act within the prohibition, that is, a knowledge of facts regarding the operation of the game, which facts would make it a lottery, not a knowledge of its illegality. (Pen. Code, sec. 7, subd. 5.)
 
 People
 
 v.
 
 Ahart,
 
 (1916) 172 Cal. 762 [159 Pac. 160], on which defendants rely, goes no farther than to read into the ordinance there involved a requirement, not expressed therein, that to constitute a violation of it there must be knowledge of the facts making the act done unlawful. This is nothing more than the application to the case of Penal Code, section 26, subdivision 4, which declares persons incapable of committing crimes who committed the act charged under an ignorance or mistake of fact which disproves any criminal intent. Here defendant knew all of the facts regarding the operation of the game in question and they cannot escape from prosecution therefor because of any opinion they may have held that upon those facts the game was lawful. (See
 
 People
 
 v.
 
 O’Brien,
 
 (1892) 96 Cal. 171, 176 [31 Pac. 45] ;
 
 People
 
 v.
 
 Hartman,
 
 (1900) 130 Cal. 487, 490 [62 Pac. 823] ;
 
 People
 
 v.
 
 McClennegen,
 
 (1925) 195 Cal. 445, 469 [234 Pac. 91];
 
 People
 
 v.
 
 Dillon,
 
 (1926) 199 Cal. 1, 7 [248 Pac. 230] ;
 
 People
 
 v.
 
 McCalla,
 
 (1923) 63 Cal. App. 783, 793, 794 [220 Pac. 436] ;
 
 People
 
 v.
 
 Leach,
 
 (1930) 106 Cal. App. 442, 446 [290 Pac. 131];
 
 People
 
 v.
 
 California P. Corp.,
 
 (1926) 76 Cal. App. 354, 363 [244 Pac. 1089].)
 

 It appears to be contended also that some sort of estoppel arises from the act of the police commission in determining that the game in question was one of skill, and the further acts of other city officers in issuing a license for it. If the official action thus relied on had been that of some officer directly charged with the duty of enforcing the law against lotteries and one of his duties had been that of issuing permits for games which in his opinion were not lotteries, we would have a case much like
 
 People
 
 v.
 
 Ferguson,
 
 (1933) 134 Cal. App. 41, 53 [24 Pac. (2d) 965], and if we were to follow that case we might be required to hold that a defense appeared. But we have here no such situation as was presented there. The law prohibiting lotteries is a part of the Penal Code, enacted by the state legislature in its exercise of the general police power of the state and in obedience to a constitutional mandate found in section 26, article IY, of our
 
 *Supp. 786
 
 state Constitution. With such enactments cities have no power to interfere. The state has not confided to the police commission any authority in the enforcement of the lottery statute or any power to determine what is and what is not a violation thereof. The city cannot confer such jurisdiction, no matter how strongly it may attempt to do so, for this is not a municipal affair. The decision of the police commission in this matter has and can have no more weight than the opinions (known to defendants) of any other persons, which, as held in
 
 People
 
 v.
 
 McCalla, supra,
 
 and
 
 People
 
 v.
 
 Leach, supra,
 
 afford no ground of defense even if given by persons supposed to be learned in the law.
 

 Defendants also contend that the game in question was not a lottery, because, as far as the evidence shows, the thing won by the successful player was only a right to play without additional charge in further games of the same sort, in evidence of which coupons were issued to him. Except where such coupons were presented, a charge was made for the privilege of playing. Section 319 of the Penal Code, which defines a lottery, refers to the prize to be won therein only as “property”, without any restrictive words. We see no reason for holding that this word is used here in other than its most general sense. In fact, section 7 of the Penal Code provides that “the word ‘property’ includes both real and personal property” (subd. 10), and “the words ‘personal property’ include money, goods, chattels, things in action, and evidence of debt”. (Subd. 12.) These definitions are not exclusive of anything else properly coming within the terms defined. “A thing in action is a right to recover money or other personal property by a judicial proceeding.” (Civ. Code, sec. 953.) “Property” is further defined in the Civil Code as a “thing of which there may be ownership”. (Civ. Code, see. 654.) There may be ownership, among other things, “of all obligations”. (Civ. Code, sec. 655.) “An obligation is a legal duty, by which a person is bound to do or not to do a certain thing” (Civ. Code, sec. 1427), and it may arise from contract. (Civ. Code, see. 1428.) The duty of the operators of this game to permit the winner to play further games free is an obligation arising from contract, and the right of the player in the matter is personal property (Civ. Code, see. 663), and a thing in action. It is, therefore, property within the meaning of
 
 *Supp. 787
 
 section 319, Penal Code. (See
 
 Ponsonby
 
 v.
 
 Sacramento Suburban F. L. Co.,
 
 (1930) 210 Cal. 229, 232 [291 Pac. 167] ;
 
 Colbert
 
 v.
 
 Superior Confection Co.,
 
 (1931) 154 Okl. 28 [6 Pac. (2d) 791, 793];
 
 United Slates
 
 v.
 
 Purvis,
 
 (1912) 195 Fed. 618, 622.)
 

 Defendants also contend that the game was in fact one of skill, not chance, and hence not a lottery. A game is not to be regarded as one of skill merely because that element enters into the result in some degree, or as one of chance solely because chance is a factor in producing the result. The test of the character of a game or scheme as one of chance or skill is, which of these factors is dominant in determining the result
 
 1
 
 (38 Cor. Jur. 291;
 
 D’Orio
 
 v.
 
 Startup Candy Co.,
 
 (1928) 71 Utah, 410 [266 Pac. 1037, 60 A. L. R. 338, 341], and note;
 
 Stevens
 
 v.
 
 Cincinnati Times-Star Co.,
 
 (1905) 72 Ohio St. 112 [73 N. E. 1058, 106 Am. St. Rep. 586];
 
 People
 
 v.
 
 Lavin,
 
 (1904) 179 N. Y. 164, 171 [71 N. E. 753, 66 L. R. A. 601, 1 Ann. Cas. 165] ;
 
 United States
 
 v.
 
 McKenna,
 
 (1906) 149 Fed. 252.) If both of these factors are present, the question of the character of such game or scheme in this respect is ordinarily one of fact. The game conducted by defendants here was substantially the same, up to the time a player covered a row of numbers on his card, as the game of tango considered by us in
 
 People
 
 v.
 
 Babdaty,
 
 (1934) 139 Cal. App. (Supp.) 791 [30 Pac. (2d) 634], the differences being merely formal. Had there been nothing further in the game here, it would unquestionably have been a lottery, as was held in
 
 People
 
 v.
 
 Babdaty, supra.
 
 But here it appears that after covering a row of numbers on his card a player was required to throw a dart at a circle upon a board (a four-inch circle for men, a six-inch circle for women), and in order to win must land his dart within the circle in three throws. This introduced a new element into the game. Considerable evidence was introduced upon the question whether the landing of the dart within the circle in three throws was a matter of chance or skill. Upon this evidence the jury might reasonably have found either way. If they found that the landing of the dart in the circle was entirely a matter of skill, or that it depended more on skill than chance, they might then have concluded further that the skill so exerted, rather than the chance which covered the row of numbers, was- the dominant element of the game, and acquitted the defendants.
 

 
 *Supp. 788
 
 On this point we find that the court erred in its instructions. The court did give an instruction (plaintiff’s “L”) declaring the rule by which the character of the game was to be tested, substantially as we have above stated it. But the court also gave, at the request of plaintiff, an instruction “T”, which appears to state a contrary rule. It reads, in part, “the mere fact that winning a prize in a game may require some skill, or even a very high degree of skill, and that skill is a very great factor in it, does not make a game any the less a lottery if it has other features necessary to make it a lottery. ... In other words, no matter how much and how great skill is required the game is still a lottery if it has the other required features of a lottery.” Elsewhere the jury were correctly instructed that “the elements of a lottery are, (1) the disposition of property; (2) upon a contingency determined by chance; (3) to a person who has paid a valuable consideration for the chance of winning the prize” (plaintiff’s “H”), and that “chance is an essential element of a lottery”. (Plaintiff’s “E”.) Reading all these instructions together, the jury must have understood “T” to mean that no matter how much skill was involved (even though a dominating factor) if there was an element of chance in a game it was a lottery. In fact, they might easily gain the same impression from parts of “ T ” not above quoted. The verdict indicates that they may have followed this erroneous instruction. The giving of such conflicting instructions on a material point is prejudicial error.
 
 (People
 
 v.
 
 Westlake,
 
 (1899) 124 Cal. 452, 457 [57 Pac. 465] ;
 
 People
 
 v.
 
 Maughs,
 
 (1906) 149 Cal. 253, 261 [86 Pac. 187].)
 

 The defendants requested this further instruction No. 7: “I instruct you that unless you are satisfied from the evidence beyond a reasonable doubt that the game conducted by defendants was a game of chance, then it is your duty to find the defendants not guilty.” This was a correct instruction. The court modified it and gave it as follows: “I instruct you that if you are satisfied from the evidence, beyond a reasonable doubt, that the game conducted by defendants was a game of skill or science and not of chance, then it is your duty to find the defendants not guilty.” This instruction as modified implied that the burden was upon defendants of proving, beyond a reasonable doubt, that the game con
 
 *Supp. 789
 
 ducted by them was one of skill. This is not the law. The defendants would be entitled to an acquittal if the evidence, raised in the minds of the jury a reasonable doubt on this point.
 
 (People
 
 v.
 
 Roe,
 
 (1922) 189 Cal. 548, 564, 565 [209 Pac. 560] ;
 
 People
 
 v.
 
 Roberts,
 
 (1898) 122 Cal. 377 [55 Pac. 137].)
 

 The judgment is reversed and the cause is remanded to the municipal court for a new trial. The appeal from the order denying motion for a new trial is dismissed.
 

 Bishop, J., and Sehauer, J., concurred.