[Civ. No. 12041. First Dist., Div. One. May 1, 1943.]

CHAS. J. BROWN, Respondent, v. BOARD OF POLICE COMMISSIONERS OF THE CITY OF LOS ANGELES, et al., Appellants.

474

Ray L. Chesebro, City Attorney, W. Jos McFarland, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Appellants.

Harold B. Pool for Respondent.

WARD, J.—This is an appeal by the Board of Police Commissioners of the City of Los Angeles and the members of such board, respondents in the court below, from a judgment in favor of petitioner, Chas. J. Brown, decreeing that such respondents issue him a permit for the conduct of a game called "Defiance." In order to avoid confusion by reason of respondents in the court below being appellants on this appeal, we will refer to them as the Board, and to the respondent on this appeal as petitioner.

Pursuant to chapter XIX of the Charter of Los Angeles, and in the manner prescribed by the provisions of section 23.01 of the Municipal Code—Ordinance Number 77,000, of said city, the Board of Police Commissioners has the sole and exclusive power and authority to issue permits for the conduct in the city of Los Angeles of certain games referred to in the ordinance as "games of skill and science."

On October 9, 1940, petitioner filed with the board an application in proper form for a permit to conduct such an enterprise at the "Venice Amusement Zone" in the city of Los Angeles, which was denied, the board finding that, while petitioner was of good moral character, and that the game, if in fact one of skill and science and not one of chance, would comport with public welfare, it was in doubt as to which classification the game came under.

Following the board's refusal to grant a permit, this action was initiated by a complaint praying for declaratory relief. The board interposed a demurrer, which was sustained, as was a demurrer interposed to petitioner's first amended complaint. A second amended complaint, which also set out a cause of action for declaratory relief only and asked no other relief, was filed, and a demurrer to that overruled, after which the board answered. At the conclusion of a trial, the case as then made out was submitted and the court ordered judgment in favor of petitioner on the second amended complaint. Before the judgment was signed, petitioner filed a new application for a permit with the board, which it denied upon the ground that the court had not, in the judgment ordered, directed that a permit be issued. Counsel for the board thereupon agreed with counsel for petitioner that a third amended complaint praying for the issuance of a writ of mandate should be filed, so that the board could then issue the permit if so ordered. Accordingly, and pursuant to this stipulation, a third amended complaint was filed, in which was added a cause of action and prayer for such relief. By the stipulation mentioned it was agreed that the board's answer to the second amended complaint should be deemed an answer to count I of the new complaint, and that certain portions of the new and second cause of action should be denied and other portions admitted, so that the issues as joined appear in: (1) petitioner's third amended complaint; (2) the board's answer to the second amended complaint, and (3) the admissions and denials stipulated to as above mentioned. The issues thus finally presented were (a) whether or not the game which it was proposed to invite the public to play was a game of chance or one of skill and science—the petitioner affirming it is the former, and the board taking no stand on the question; (b) whether or not a controversy on this point thus existed between them—which the board denied; (c) whether or not the playing of the game would constitute a nuisance and would not comport with the public welfare; and (d) whether or not the petitioner is entitled to have issued to him the permit demanded so that it is the duty of the board to issue it.

No demurrer was interposed to the third amended complaint, and the action was again submitted upon the evidence previously taken, following which the court included in the judgment a direction for the issuance of a writ of mandate.

The court found that "Defiance" is a game of skill and science; that the petitioner having met the requirements of the governing ordinance in every respect, it is the duty of the board to grant his application; that a controversy exists between the parties, such controversy being as to the construction and interpretation of said game. As a conclusion of law it accordingly finds that petitioner is entitled to have issued to him such permit.

 Appellant board contends that the mechanical device and its operation constitute a gambling game. Gaming, which is ordinarily synonymous with gambling (24 Am.Jur. 398), is specifically prohibited by law in this state. (Penal Code, Pt. 1, tit. 9, ch. 10.) Gaming usually takes the form of a bet or wager involving gain and loss, between known participants, of money or property staked upon the happening in the future of an event at the time uncertain. There is a clear difference between a bet or wager and a premium or reward offered for the performance of an act of skill. In the case of a premium it is known before the event who is to give, there being until the outcome but one party to the transaction; in a wager, there must be two parties, whose identity is established before the outcome of the uncertain event, and these are the parties who must either win or lose. (12 Cal.Jur. 1088.) "A premium is a reward or recompense for some act done; a wager is a stake upon an uncertain event." (*Hankins* v. *Ottinger*, 115 Cal. 454, 457 [47 P. 254, 40 L.R.A. 76].) It may be admitted that competitive shooting at a target is a game of skill. The fact that a definite charge is exacted for the privilege of demonstrating such skill does not bring the sport within the classification of a misdemeanor as enumerated or referred to in Penal Code, section 330. (27 C. J., p. 1051, § 267.)

 Much evidence was presented on the subject of the game and the manner of playing it, and it is described quite at length in the trial court's findings. We quote therefrom: "The players are each provided with a chair at a counter, the top of the counter being approximately 22″ wide and 36″ above the floor. In front of each player and across the counter is provided a four sided box approximately 22″ x 24″ with no top, and with a flat bottom of wood which consists of 36 holes forming a solid square being six holes each way, each 2¼″ square, 2″ deep and with ⅜″ partitions between them

and with a smooth wooden border around the holes, sloping about $\frac{1}{4}''$ up toward and extending to the four sides of the box, being $3\frac{3}{4}''$ to the lateral sides, and $5''$ to the front and back sides. The front of the box toward the player is constructed of clear glass. The top of which is $11\frac{1}{2}''$ above the holes, and which slopes from the bottom to the top $2''$ away from the holes and from vertical and toward the player, the other three sides are over $12''$ high vertical and transparent. The center of the square of 36 holes is approximately $3'6''$ from the inside edge of the counter, and the top of the holes is approximately $6''$ below the top of the counter. A separate box is provided for each player. . . .

"Each player will be given from one to five round sponge rubber balls of a diameter of not less than $1\frac{7}{8}''$ and not over $1\frac{15}{16}''$. All players in any given game will use balls of the same diameter. These first balls will be of the same definite color for each player and will be known as Pay Balls. Each player will toss by hand the Pay Balls into that player's box, one ball at a time in an effort to place as many of them as possible in holes in a straight line. Thereafter each player will be given similar balls of a different color designated Free Balls which the player will be permitted to throw by hand one at a time into that player's box. Any player throwing more than one ball at a time will be disqualified. The operator of the game will announce 'THROW FREE BALL NO. 1, throw Free Ball No. 2 etc,' and as the announcements are made, a corresponding number will be flashed on the wall of the room and remain until some player has completed in that player's box a straight line of six balls in six holes of which part are Pay Balls and the other Free Balls with the total number of free balls in the box the same as the last number called. Such player will then be announced as the winner and will be given the prize which will be designated before the game begins. Any player completing a line with a total of only six balls thrown will share in the prize. The balls used will be of such density that when tossed into a hole they will remain and not bounce out. All players must remain seated while playing the game. The winner of the game must by that player's own hand and skill toss each and every ball of the six that comprise the winning row as well as all other balls in that box. In this game the play will be entirely individual, and no toss, throw or any act of any player in the

game will be permitted to either help or hinder any other player.

"All prizes awarded will be announced before the beginning of each game and will be confined to cigars, cigarettes and other merchandise."

The trial court had before it the witnesses and a demonstration of the game. It was able to observe any propensities toward a misstatement of the facts, and to determine from the demonstration the characteristics of the game. There is nothing in the testimony of the witnesses to warrant a conclusion that it was palpably false, and it was for the trial court to determine whether skill is a negligible factor in the game and that chance predominates. The test is which element—skill or chance—determines the result. Under the circumstances we are unable to say as a matter of law that the game is one of chance and not of skill. If the mode of operation or rules of the game should be changed, the findings of the trial court in this proceeding would not necessarily be applicable. The mere granting of the permit would not authorize an illegal game.

 The main contention presented on this appeal is that courts may not entertain suits for declaratory relief in the absence of a bona fide controversy between the parties, and that here the complaint, as amended, affirmatively shows there is no dispute concerning a question of law or of fact. In addition it is contended, and which must be admitted, that there is no direct allegation in the cause af action for mandate that defendants acted in an arbitrary, capricious or fraudulent manner.

The board reviews the controversy as one in which the petitioner has devised a scheme, the operation of which he believes to be legal, and is attempting in advance to obtain judicial approval thereof. An attempt to use the remedy of declaratory relief for such a purpose should be frowned upon. (*Hayden Plan Co.* v. *Friedlander*, 97 Cal.App. 12 [275 P. 253].) In the Hayden case it was contended that petitioner did not intend to issue securities within the meaning of the Corporate Securities Act. In the present case petitioner proposes to operate a game which under the ordinance requires a permit. If in other respects he has met the requirements of the ordinance he is entitled to an order from the board either granting his application, or denying it upon the ground

that in its opinion the game proposed to be played is not one for which the board is authorized to issue a permit.

The city of Los Angeles has provided for the granting of a license for the operation of certain games of skill, not prohibited by the provisions of Penal Code, part 1, title 9, chapter 10, or any municipal ordinance, to one of good moral character providing the maintenance of such game will comport with public welfare. It is mandatory that the board deny an application for a license though the game be one of skill if the dominating factor is chance. It is conceded that if sufficient facts are presented thereon, it is the duty of the board to make a finding as to the character of the game. The board does not claim that all the facts entering into the operation of the game herein were not presented. It found that the applicant was of good repute and that the maintenance of the game at the desired location would comport with public welfare. However, it made no finding as to the character of the game and denied the application for a permit.

The complaint in the present proceeding alleges that it is the duty of the board to issue, and that the petitioner is entitled to, the permit. The court found that an actual controversy existed and concluded that it is the duty of the board to issue the permit. It seems that under such circumstances there was a controversy in law and in fact and the applicant was entitled to petition the court for a declaration of his legal rights. In *Jackson* v. *Lacy*, 37 Cal.App.2d 551, 561 [100 P.2d 313], the court said: "Declaratory relief has for its purpose an eclaircissement or a liquidation of doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation."

The board strenuously objects to the judgment in the mandate proceedings upon the ground that the complaint, as stated, failed to allege that the defendants acted in an arbitrary, capricious or fraudulent manner.

A requisite allegation in a petition for writ of mandate is that there has been action of an arbitrary, capricious or fraudulent character, or an action in abuse of discretion (*Dierssen* v. *Civil Service Commission*, 43 Cal.App.2d 53 [110 P.2d 513]), or a breach of duty (16 Cal.Jur. 862), or one without due regard to the rights of the applicant. (*Hogan* v. *Retirement Board*, 13 Cal.App.2d 676 [57 P.2d 520].) The substance of the allegations in the cause of action in

mandamus is that the board breached its duty in refusing to issue the permit. No demurrer was interposed—on the contrary the third amended and supplemental complaint was filed by stipulation that a separate cause of action for mandatory relief would be added. Prior thereto the trial court had determined that it was the duty of the board to issue the permit. Under the circumstances this contention of the board is without merit.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.