**STUBBS et, Plaintiffs, v. DICK et, Defendants.**

Common Pleas Court, Mercer County.

No. 14152.   Decided December 10, 1949.

Short & Dull, Celina, for applicants.

### OPINION

By DULL, J.

The Trustees of the Richardson and Bretz Memorial Endowment created under the will of David Herbert Richardson, deceased, have asked this court for a declaratory judgment interpreting and construing the following provision appearing on page 3 of the will at lines 19, 20 and 21, "Games of chance, whether for pleasure or profit, shall never be permitted at any time whether sociably or otherwise", and again on page 5 at lines 28, 29 and 30, "Games of chance whether for pleasure or profit shall never be permitted in said building at any time, whether sociably or otherwise."

The Trustees state that certain clubs or societies, who might otherwise be entitled to the use of the Richardson and Bretz Memorial building by the provision of the will creating the trust, have asked the Trustees to permit the playing of social card games such as bridge, with or without the awarding of prizes furnished by the club, society, host or hostesses at occasional meetings in the building; and that under the provisions of the will quoted above the Trustees are uncertain as to their powers and duties in such cases.   The Trustees, therefore, ask this court for direction and guidance.

All of the named defendants, having waived the issuance and service of summons and voluntarily entered their appearances, the matter has been submitted to the court on the memorandum of counsel for the Trustees and by authority of §§12102-1, 12102-4, 10504-66 and 11257 GC.

The basic question to be answered is: what is a game of chance? It matters little whether the game is for pleasure or profit, whether social or otherwise inasmuch as the language of the will prohibits any game of chance.

On this point, one of the earliest leading cases states: "Universal acceptance of a 'game of chance' is such a game as is determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted by chance." State v. Gupton, 30 N. C. 271 (1848); Commonwealth v. Plissner, 4 N. E. (2d) 241 (Mass.); U. S. v. McKenna, 149 Fed 252 (1906); Vol. 4, No. 2 O. S. L. J. 238.

But the real test is whether chance is the determining element in the outcome of the game, and not whether the game contains elements of chance or skill. Vol. 4, No. 2 O. S. L. J. 238. If chance is the determining element in the outcome of the game, then it is a game of chance. Further, if prizes or money are awarded to the winner or winners of the game, the game becomes gambling and within the prohibition of the gaming statutes of Ohio, §13054 GC et seq.

But if skill, judgment, practice or adroitness is the determining element in the outcome of the game, then it is a game of skill. "A game of skill is one in which nothing is left to chance, but superior knowledge and attention, or superior strength, agility, and practice gain the victory. Of these kinds of games chess, draughts, or checkers, billiards, fives, bowls and quoits may be cited as examples; and it is true that in these latter instances superiority of skill is not always successful. The victory is not necessarily to the swift. Sometimes an oversight, to which the most skillful is subject, gives an adversary the advantage, or an unexpected puff of wind or an innocent gravel in the way may turn aside a quoit or a ball and make it come short of the aim. But, if those instances were sufficient to make the games in which they may occur games of chance, there would be none other than games of that character. Games of skill are distinguished from games of chance in that the latter are games dependent upon chance or luck, and in which adroitness has no office at all." State v. Gupton, 30 N. C. 271, 274; 18 Words and Phrases 64.

Further, if prizes are awarded by a host as a matter of courtesy and favor, as a reward for skill, to the winner or winners of such a game, it does not become gambling or gaming. In one of the leading Ohio cases on this question, it is stated: "If the contestant, or player risk nothing, as where prizes are offered in school by the teacher to scholars for the best essay, or in society by the host or hostess as an inducement to guests to attend social gatherings and indulge in games innocent in themselves, the winners to receive prizes as a matter of grace and favor, and as a reward for skill, it is not considered that the function embraces any gambling element, whatever other objectionable features, if any, are present; but where .the players make up by the payment of money, or other thing of value, a purse which affords the prizes, as in the ordinary raffle, the game is a gambling game, whether skill enters into the result or not." **Stevens v. The Times-Star Co. 72 Oh St 112.**

Are bridge, and similar social card games, games or chance or skill?

THE ENCYCLOPEDIA AMERICANA, 1946 Edition, Vol. 5 at page 604 under the heading of Cards, by John Hubert Cornyn of the editorial staff of THE AMERICANA states:

"An immense variety of games may be played with cards, some involving chance only, others combining chance and skill, the best furnishing intellectual amusement. There are round games, in which any number of persons may join, as poker, hearts, loo, etc.; games for four persons, as whist, in its different forms, and euchre; for two, as piquet, ecarte, bezique, cribbage and pinochle, closely resembling bezique, and at present much played in the United States; and there is one game, solitare, played in many ways, at which a single person often finds both restful diversion and pleasant occupation for the mind."

How about the game of bridge in particular?

THE ENCYCLOPEDIA AMERICANA, 1946 Edition, Vol. 4 at pages 494 and 495, under the heading of Bridge by Ely Culbertson, bridge authority and author, states:

"Bridge—a partnership game of cards played by four persons, the successor of whist and the forerunner of auction bridge in popularity; also called "bridge whist." Bridge came into vogue about 1894, when it was introduced in the Port-

land Club of London by Lord Brougham, and the game remained popular for about a decade, when auction bridge quickly usurped its place.

Auction Bridge—This form of bridge was the third in succession of the partnership games of the whist family, its predecessors being whist and bridge whist. While there are still many playing auction, it has been largely supplanted by contract bridge, particularly in the larger cities. The feature of auction bridge, which gained for it almost instant popularity when the game was first introduced, was the element of competitive bidding for the privilege of naming the trump suit, this privilege being won by the player contracting to take the largest number of tricks.

Auction bridge differs from contract only in some phases of the bidding and scoring; the play is the same. The salient point of difference between auction and contract bridge is that in auction all tricks made over the book of six are scored below the line, whereas in contract only the actual number of tricks bid are scored below the line and count toward game, any extra tricks made over the number contracted for being scored above the line and not counting toward game or toward slam or rubber premiums.

Contract Bridge—This was the fourth in the succession of partnership games of the whist family, the list starting with whist and continuing with bridge whist, auction, and then contract. The essential feature of contract bridge and the point which distinguishes it from other games of similar basic makeup is that no tricks are counted toward game except those which are actually contracted for in the bidding.

If the declarer fulfills his contract, he enters "below the line" on the score sheet the point value of the number of tricks called for by the contract. These points count toward game. At the same time he enters "above the line" the points made by taking extra tricks above the number required in his contract as well as premiums for bidding and making slams (12 or 13 tricks), for winning rubbers and for honors held. These points above the line do not count toward game.

If the declarer fails to fulfill his contract, his opponents are awarded points above the line according to the number of tricks by which he fell short of keeping his prediction. One hundred points for tricks bid and made constitute a game. The rubber premium is 700 points if the rubber is won in two games with the opponents winning no game at all, and 500 points if the opponents win one of the three games. A premium of 300 points is awarded for a single game if the rubber is unfinished."

It is, therefore, the studied and sincere opinion of this court that bridge in any form and similar social card games are games of skill and not games of chance.

It is not the intent of this court by naming one game, the game of bridge, to call into play the maxim of EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS, whereby the express mention of the one game is tantamount to an express exclusion of all others. The very opposite is the intent: games, and the interest taken in them, change as does everyone and everything. There cannot be, nor should there be, any limitation on the exercise of reason and judgment on the part of those whose privilege and duty it is so to do.

Keeping firmly in mind the fundamental principles of will construction, the first in importance of which is, that the sole end in construing a will is to ascertain the testator's intention, and others of almost equal importance, that the testator's intention must be ascertained from the language he used in the will, that every part of the will is construed from its four corners, and that wills are liberally construed to give effect to the testator's intention;

There appearing in the will the following significant language: On page 3, line 5, "The income from said investment to be forever used not for profit, but for charitable and benevolent purposes—." On page 6, line 24, "I am bequeathing all my earthly possessions for the benefit of the present and coming generations of Celina,";

And, "Of all instruments that need the benefit of liberal construction—a construction that prefers substance to mere form—wills need it the most." **Thompson v. Thompson 4 Oh St 333, 351;**

It is again the studied and sincere opinion of this court that the testator intended by his use of the words, "games of chance" to forbid gambling in any form in the Richardson-Bretz Memorial building. Further, that he intended to forbid the playing in the Richardson-Bretz Memorial building of any games of chance, per se, that is to say, games in which chance is the determining element in the outcome of the game or games in which people ordinarily take no pleasure in them unless money or other thing of value is at stake. Further, that he did not intend to forbid the playing in the Richardson-Bretz Memorial building of games of skill, that is to say, games in which skill, judgment, practice or adroitness is the determining element in the outcome of the game. Further, that he did intend to forbid the playing in the Richardson-Bretz Memorial building of games of skill if there was any gambling connected with such playing.

Therefore, so far as it is within the power of this court to do so, this court authorizes and directs the Trustees of the Richardson-Bretz Memorial Endowment to inform the persons, clubs, societies or organizations using or which may use the Richardson-Bretz Memorial building that:

1. Gambling in any form is not permitted.

2. The playing of any game of chance, per se, is not permitted.

3. The playing of games of skill such as bridge and similar social card games with or without the awarding of prizes is permitted, provided that any prize or prizes awarded must be furnished by the club, society, organization, host or hostess and not by the players themselves contributing money or other thing of value to a pot or purse which affords the prize or prizes.

4. The playing of games of skill such as bridge and similar social card games is not permitted if there is any gambling connected with such playing.