[Civ. No. 19592. Third Dist. May 5, 1981.]

In re the Marriage of FRANCES MAE and
JOHN ASHLEY SHELTON.
FRANCES MAE SHELTON, Respondent, v.
JOHN ASHLEY SHELTON, Appellant.

**COUNSEL**

Price, Burness, Price & Davis and Robert L. Davis for Appellant.

Mulkey, Aisthorpe, Kelly & Cook, Loyd H. Mulkey, Jr., and Thomas W. Kelly for Respondent.

**OPINION**

**PERLUSS, J.*—**This case arises from the dissolution of the marriage of Frances Shelton (wife) and John Shelton (husband). The parties were married on July 31, 1949, and separated on July 17, 1978. During the marriage, the parties accumulated community property which included, inter alia, a real estate business known as Shelton Realty. In a ruling of November 21, 1979, the trial court awarded the husband the Shelton Realty business, "subject to the right of the wife, if she so desires to use the name 'Fran Shelton Realty' in any new real estate business she may wish to establish."

---

*Assigned by the Chairperson of the Judicial Council.

On December 10, 1979, husband filed a notice of motion requesting modification of the award to deny wife the right to use the name "Fran Shelton Realty" or other name similar to the name "Shelton Realty" in any new competing business. The trial court denied the motion and reaffirmed its decision in a ruling filed on January 8, 1980; the ruling was incorporated in the interlocutory judgment of dissolution of marriage filed and entered on April 10, 1980.

On July 13, 1979, approximately one year after the parties' separation but prior to the interlocutory judgment of dissolution of marriage, husband took $500 in cash (withdrawn from a community property bank account) and $9,500 in cashier's checks (purchased with the proceeds from the sale of community personal property) to a casino at Lake Tahoe, Nevada, where he won $21,000 or $22,000. The following day he used the winnings and the original $10,000 "stake" to purchase a Ferrari car. During the trial, wife argued that the entire value of the car was community, whereas husband argued that that portion of the car purchased with his gambling winnings was his separate property. In its rulings of November 21, 1979, the trial court held "the $32,000.00[1] used to purchase the Ferrari was a community asset and the wife is entitled to $16,000.00 of that asset." The rulings of November 21, 1979, were incorporated in the interlocutory judgment of dissolution of marriage filed and entered on April 10, 1980.

I

█ Husband contends the trial court's judgment allowing wife to use the name "Fran Shelton Realty" in her realty business authorizes unfair competition with his existing realty business, "Shelton Realty," which the court awarded to him. He argues the judgment allows wife's new business to benefit from the name of an established business.

█ It is not per se unlawful to use a name similar to that of an established business. (*Visser* v. *Macres* (1963) 214 Cal.App.2d 249, 253 [29 Cal.Rptr. 367].) But if the use of that name constitutes unfair competition, it may be enjoined. (*Ibid.*) The test is whether the similarity between the two names will deceive or confuse the public. (*Id.* at

---

[1]Husband testified he won "approximately $21,000" but he also testified he paid $31,000 or $32,000 cash for the car, plus some additional money not pertinent here, which he borrowed. It would appear the court impliedly found the winnings to be $22,000, since it *expressly* found he "won $32,000 gambling with the $10,000" and neither party challenges this figure.

p. 255.) Proof of actual deception or confusion is not required; probability or likelihood is sufficient. (*Ball* v. *American Trial Lawyers Assn.* (1971) 14 Cal.App.3d 289, 310 [92 Cal.Rptr. 228]; *Visser* v. *Macres, supra*, at p. 256.)[2] The names need not be identical. (*Jackman* v. *Mau* (1947) 78 Cal.App.2d 234, 239 [177 Cal.Rptr. 599].)

These principles apply even where the owner of the business uses his or her own name, if the name of the already existing business has acquired a "secondary meaning." (*Visser* v. *Macres, supra*, at pp. 255-257; *Jackman* v. *Mau, supra*, at p. 239.) "Such secondary meaning grows out of long association of the name with the business, and thereby becomes the name of the business as such; is acquired when the name and the business become synonymous in the public mind; and submerges the primary meaning of the name as a word identifying a person, in favor of its meaning as a word identifying that business." (*Visser* v. *Macres, supra*, at p. 253.)

▆ The difficulty here is that while in some instances just the comparison of the two names may be adequate to establish the likelihood of confusion (*Ball* v. *American Trial Lawyers Assn., supra*, 14 Cal.App.3d at pp. 308-309), the likelihood of confusion between trade names is ordinarily a question of fact (*Visser* v. *Macres* (1963) *supra*, 214 Cal.App.2d at p. 254; *Ball* v. *American Trial Lawyers Assn., supra*, at p. 308; *Allied Artists Pictures Corp.* v. *Friedman* (1977) 68 Cal.App.3d 127, 136 [137 Cal.Rptr. 94].)

We cannot hold that just the comparison of the two names is adequate to establish the likelihood of confusion and there is nothing in the record which factually would support such a conclusion.

The relief sought by the husband may be obtained, if appropriate, in a proceeding brought pursuant to section 14330 of the Business and Professions Code.

## II

▆ Husband contends his postseparation gambling proceeds constituted his separate property because he acquired them after separation

---

[2]The rule is codified in section 14330 of the Business and Professions Code which provides in part: "Likelihood of injury to business reputation or of dilution of the distinctive quality of ... a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

from wife. He argues the income arose from his separate "skill, efforts and industry," thus commingling community property and separate property, and he should receive a fair share of the profits as his separate property.

This is apparently a case of first impression. *In re Marriage of Wall* (1972) 29 Cal.App.3d 76 [105 Cal.Rptr. 201], dealt with similar facts but this issue was not before the court. There the wife used her support payments to purchase an Irish Sweepstakes ticket. She won $120,000. Finding that the support payments were her separate property, the court affirmed the lower court's award of the entire winnings to the wife as her separate property. (*Id.* at p. 80.) Our problem here is different since husband concedes that the funds used for his gambling were community property.

Here we have a conflict between two general rules: Proceeds follow the character of their source (7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, § 21, p. 5112) and property acquired after separation is separate property. (Civ. Code, § 5118.) The source here was community property; the proceeds were acquired by husband after his separation from wife.

Husband's "skill, efforts, and industry" were minimal. Although perhaps involving some slight element of skill, successful gambling of the type afforded at the Lake Tahoe casinos depends mainly upon good luck.[3] *Kershman v. Kershman* (1961) 192 Cal.App.2d 18, 21 [13 Cal.Rptr. 288], held where the community property portion in commingled community and separate property is inconsiderable compared to the separate property. There is no reason why the reverse should not be equally true. Here, husband's separate property contribution was the minimal skill and effort required at games of chance, an inconsiderable factor compared to the community property contribution of $10,000. The entire winnings are therefore community property and the trial court's judgment was correct.

---

[3]We take judicial notice that the gambling offered at the casinos at Lake Tahoe consists primarily of "games of chance" insofar as the law is concerned, i.e., games which by definition are contests in which chance predominates over skill. (*In re Allen* (1962) 59 Cal.2d 5, 6 [27 Cal.Rptr. 168, 377 P.2d 280, 97 A.L.R.2d 1415]; see 18 Words and Phrases, Game of Chance, pp. 91-96.) There is no claim made nor showing in the record that husband made his winnings at true games of skill. (Such as Bridge—see *In re Allen, supra*, at p. 7.)

We are aware that gambling contracts are illegal in California (Pen. Code, § 330) and will not be enforced. (*Kyne* v. *Kyne* (1940) 16 Cal.2d 436, 438 [106 Cal.Rptr. 620].) *In re Marriage of Wall, supra*, 29 Cal. App.3d at page 80, expressly did not resolve the question whether the expectancy of financial gain under a gambling contract is susceptible of community property division. However, we have here no expectancy or enforcement problem, but an accomplished fact. Husband does not and cannot assert the illegality of gambling as a defense to community property division.

The judgment is affirmed.

Reynoso, Acting P. J., and Blease, J., concurred.