INTERNATIONAL MUTOSCOPE REEL CO., INC., a New York Corporation, and Others, Respondents, *v.* LEWIS J. VALENTINE, Individually and as Police Commissioner of the City of New York, Appellant.

First Department, April 3, 1936.

*Charles C. Weinstein* of counsel [*Paxton Blair* and *Alvin McKinley Sylvester* with him on the brief; *Paul Windels, Corporation Counsel*], for the appellant.

*Joseph Sterling* of counsel [*Robert H. Sterling* with him on the brief], for the respondents.

GLENNON, J.   This action was instituted by plaintiffs-respondents, some of whom are manufacturers, and others operators and owners of machines ordinarily known as and commonly called " crane," " claw " and " digger " type, against the police commissioner of the city of New York for a declaratory judgment and injunction.   In their prayer for relief plaintiffs asked the court (a) to determine that the machines manufactured, distributed, licensed and operated by the plaintiffs-respondents are not violative of sections 982, 977 and 1376 of the Penal Law, and (b) that the defendant police commissioner be enjoined and forever restrained from seizing, confiscating or otherwise taking away the machines manufactured, distributed or owned by the plaintiffs or from anywise molesting customers or licensees using or operating same, or in any other fashion interfering with their operation.

After a trial at Special Term a judgment was entered in which it was declared that the machines were not gambling devices within the meaning of the Penal Law. The court, however, declined to enjoin the police commissioner from taking appropriate proceedings against plaintiffs " in the event that it shall appear that a machine or machines manufactured, leased or stored are so operated that said machines or devices have been improperly altered or adjusted or in any other manner operated so as to constitute a fraud upon the persons depositing moneys in said machine."

We are concerned on this appeal with two questions only: *First,* whether plaintiffs' machines are gambling devices within the meaning of the Penal Law; and, *second,* whether under the circumstances appearing in this record, the court at Special Term should have entertained jurisdiction and, entered a declaratory judgment in favor of the plaintiffs.

We are of the opinion that the machines are gambling devices, and, further, that the court fell into error in granting a declaratory judgment determining that they were not.

It would serve no useful purpose to detail at length the make-up of the machine and its method of operation. It is sufficient to say that the machine received in evidence upon the trial was submitted to us for our examination and inspection. We had no hesitation in concluding that the machine is unquestionably a gambling device and violative of section 982 of the Penal Law which, with recent amendments, reads as follows:

" § 982. Keeping slot machines or devices. 1. It is unlawful (a) to manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to sell, rent, lease, let on shares, lend or give away, or to permit the operation of, or for any person to permit to be placed, maintained, used or kept in any room, space or building owned, leased or occupied by him or under his management or control, any slot machine or device as hereinafter defined:

" (b) to make or to permit to be made with any person any agreement with reference to any slot machine or device, as hereinafter defined, pursuant to which the user thereof, as a result of any element of chance or other outcome unpredictable to him, may become entitled to receive any money, credit, allowance, or thing of value or additional chance or right to use such machine or device, or to receive any check, slug, token or memorandum entitling the holder to receive any money, credit, allowance or thing of value.

" 2. Any machine, apparatus or device is a slot machine or device within the provisions of this section if it is one that is adapted, or may readily be converted into one that is adapted, for use in

such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device; irrespective of whether it may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value.

" 3. A person who violates this section is guilty of a misdemeanor."

The quoted statute is a broad one and prohibits the manufacture or possession of slot machines or devices, " pursuant to which the user thereof, as a result of any element of chance or other outcome unpredictable to him, may become entitled to receive any money, * * * or thing of value." Observation and inspection of the " crane " slot machine indicates that the element of chance not only exists, but that it predominates. The court at Special Term seemed to predicate its ruling upon the theory that skill and not chance controlled the operation of the device. Needless to say, our views are entirely different.

Respondents insist that their primary purpose is the sale of merchandise. Common sense indicates that people do not resort to so-called vending machines of the type under consideration to purchase articles which may be necessary for their use. Furthermore, the manufacturer could not have entertained any such thought; otherwise the statement " 5¢ To See It Operate 5¢ " on the plate which is attached to the machine would not have been placed in such a prominent position.

The facts set forth in the pleadings and the proofs adduced upon the trial did not warrant the entry of a declaratory judgment in this case. In *James* v. *Alderton Dock Yards* (256 N. Y. 298) Judge CRANE said: " The use of a declaratory judgment, while discretionary with the court, is nevertheless dependent upon facts and circumstances rendering it useful and necessary. The discretion must be exercised judicially and with care. (*Westchester Mortgage Co.* v. *Grand Rapids & I. R. R. Co.*, 246 N. Y. 194.) It is usually unnecessary where a full and adequate remedy is already provided by another well-known form of action. The general purpose of the declaratory judgment is to serve some practical end

in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations. (*Brownell* v. *Board of Education*, 239 N. Y. 369; *Sartorious* v. *Cohen*, 249 N. Y. 31.) No limitation has been placed or attempted to be placed upon its use, and yet this main purpose underlies the exercise of discretion. (See ' The Declaratory Judgment,' by Prof. Edwin M. Borchard, 28 Yale Law Journal, 105; *Braman* v. *Babcock*, 98 Conn. 549, 553.) Where there is no necessity for resorting to the declaratory judgment it should not be employed."

We do not believe there was any necessity for resorting to a declaratory judgment in this case, except possibly to circumvent the long-established rule in this State, that a court of equity will not, except in very unusual cases, restrain the police from enforcing a valid criminal statute. (*Delaney* v. *Flood*, 183 N. Y. 323; *People ex rel. Ellison* v. *Lavin*, 179 id. 164.) Nobody can quarrel with the constitutionality of the provisions of the Penal Law now under consideration. If the plaintiffs saw fit to manufacture, license, vend and operate machines of a type which are prohibited by our Penal Law, they should not now be heard to say that their so-called property rights are or may be affected. If their argument were sound, violators of the law generally might apply to the Supreme Court to restrain the police commissioner from interfering with them on the general theory that their property rights would be impaired.

The judgment so far as appealed from should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

Judgment so far as appealed from unanimously reversed, with costs, and the complaint dismissed, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.