51 So.2d 550

**WHITE et al. v. STATE.**

**6 Div. 122.**

Court of Appeals of Alabama.
March 20, 1951.

See also 253 Ala. 645, 46 So.2d 413.

W. D. Partlow, Jr. and Hugh W. Roberts, Jr., Tuscaloosa, for appellants.

618

A. A. Carmichael, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for appellee.

HARWOOD, Judge.

The State filed a bill in the Circuit Court of Tuscaloosa County, in Equity, seeking the forfeiture and condemnation of a pin ball machine as a gambling device. The bill averred that the machine was in the possession of Roosevelt White at the time of its seizure, and that Jim Thomson owned the machine, or claimed an interest in it. See Sec. 287, Title 14, Code of Alabama 1940.

Upon completion of the hearing the court below entered a decree finding the machine to be a gambling device, and ordering its forfeiture to the State.

From such decree appeal was perfected to this court, which was proper, though the proceedings below were in equity. Section 290, Title 14, Code of Alabama 1940.

For the State Mr. Hardin Billingsley, Chief of Police for the City of Tuscaloosa, testified that he seized the machine in question in the West End Cafe, which Cafe was operated by the respondent Roosevelt White. At the time of its seizure the lights on the machine were lit, and it was ready to operate. Although Chief Billingsley stated he did not remember seeing any one operating the machine just immediately before its seizure, he had seen people playing this machine on his previous visits to the Cafe.

He further testified that as the machine was being removed from the Cafe at the time of its seizure a castor like device on the bottom of one of its legs fell off. This he turned over to the Solicitor. He further testified that at the time of its seizure each of the four legs of the machine had attached to it one of these castor like devices; that at the time of the hearing below another castor was missing from one of the back legs in addition to the one that fell off during the removal at the time of its seizure. Otherwise the machine was in the same condition as at the time of its seizure. Over respondents objection the machine was received in evidence.

These castor like attachments consist principally of a rounded saucer like base, out of which protrude a threaded shaft. The shaft is inserted into the bottom of the leg of the machine. According to respondents witnesses these appliances are used to regulate the evenness of the playing plane, though it was admitted by them that the slant of the playing field could also be altered by these appliances.

We cannot see that the mere absence of one or more of these castors, when their operation was explained, could materially effect the probative value of the machine in determining whether it was a gambling device within the scope of our statutes. Certainly we are unwilling to say that the court abused its discretion in admitting the machine into evidence merely

because of this unsubstantial change in its condition.

The machine has been forwarded to this court for examination.

In the brief of the Attorney General the machine is described as follows: "It is a rectangular affair standing on legs about waist high. The playing area is covered with glass. Upon the insertion of a coin, the player receives a number of steel balls which are shot one at a time by means of a plunger. The plunger shoots the balls to the top of the inclined playing area, and the balls roll down through a series of pins, bumpers, and hazards. Near the lower end of the playing surface are two 'flippers' which can be manipulated by buttons on the sides of the machine. If a ball strikes one of these flippers, the player, by properly manipulating the buttons, can send the ball back up the board for another journey through the scoring devices. The only prizes awarded for high scores are free games on the same machine."

The above seems to be a reasonably fair and accurate description.

Among the witnesses presented by the State was Floyd Robertson, who testified at first that he was a "little bit" familiar with the machine in question, or similar machines, but on further redirect examination testified that he had been on the police force of the City of Tuscaloosa for twenty-five years, and that during that time and fairly recently he had seen numerous machines of the type of this machine played; he had also "been into" several machines just like the present one as far as he could tell. Mr. Robertson stated that in his opinion the present machine was a gambling device.

Chief Billingsley also testified as to his length of service on the police force; that he had never operated pin ball machines very much, but had observed them operated, and had seen this machine operated on previous visits to the West End Cafe, and that it could be operated as a game of chance.

Mr. Charles Nelson was called as a witness for the State. He testified that he had had some fourteen years experience in working on and servicing pin ball machines, and for awhile was employed by Mr. Thomson, one of the respondents. Upon the machine being opened in court Mr. Nelson demonstrated how, by rearranging the four plugs in nine available sockets the possible score of the machine could be varied.

However, it was Mr. Nelson's opinion that the addition of the flippers to the machine made it a game of skill—that chance played a very small part in the score with these additions to the machine.

The respondents introduced several witnesses whose testimony was to the effect that the machine in question, because of the addition of the flippers, constituted a game of skill rather than a game of chance. One of these witnesses, Billy Carl Hamilton, testified that he became so proficient at playing this machine and won so many free games that people would stand around and watch him play; that at first he made low scores, but after he had practiced a long time he could operate the flippers and knock the ball to most any point on the board that he wanted it to go. He had observed other people playing the machine, and those who had not practiced made low scores, and those who had practiced made high scores.

On cross examination this witness testified that he was employed by Jim Thomson, one of the respondents, and had been so employed for a year and a half, his work being to service the machines owned by Thomson. He stated that this machine was owned by Thomson.

He further testified that it was possible for the ball to miss the flippers entirely on its trip down the table, when it could not then be controlled, but he maintained that by using skill one need not miss the flipper.

All of the other witnesses for the respondents, while contending that this machine was a game of skill, apparently were greatly influenced in their conclusions on the basis that with practice the score to be made could be raised, while without practice low scores would result.

Appellants counsel contends that the lower court erred in permitting Chief Billings-

ley and Officer Robertson to testify that this machine was a gambling device because of their respective lack of qualifications as experts in the field in which they were testifying.

In the trial of equity cases the court shall consider only such testimony as is relevant, material, competent and legal, and shall not consider any testimony or evidence that is immaterial, incompetent and illegal. Sec. 372(1), Title 7, Code of Alabama 1940.

■ The evidence tending to establish Chief Billingsley's qualifications as an expert was hardly sufficient to qualify him. We pretermit further consideration as to whether this witness, under the evidence tending to establish his qualifications, was shown to be so qualified, for we think it clear that Officer Robertson was shown to be sufficiently qualified to give such testimony.

■ As stated by Samford, J., in Reynolds v. State, 29 Ala.App. 139, 193 So. 192: "In a technical sense, a witness does not have to be an expert to give testimony as to things which he knows by study, practice, experience or observation on that particular subject."

■ Certainly Robertson's testimony tended to show that by experience and observation he had acquired a knowledge of pin ball machines and their operational qualities beyond that held by the ordinary witness. Hicks v. State, 247 Ala. 439, 25 So.2d 139. Furthermore, the question of a witness' qualifications as an expert is largely in the discretion of the trial court and will not ordinarily be disturbed unless a clear abuse of discretion is shown. See Ala.Dig., Criminal Law, ☞481 for innumerable citation of authorities. We find no such abuse in this instance.

Perhaps no State has a more all encompassing legal deterrent to gambling devices than does Alabama. Our statutory provisions thereon are indeed broad. Subsection (d) of Sec. 283, Title 14, defines a gambling device as: "Any machine, mechanical device, contrivance, appliance, or invention, whatever its name or character, which is operated *or can be operated as a game of chance.*" (Italics ours.)

Our Supreme Court in State ex rel. Green v. One 5¢ Fifth Inning Base Ball Machine, 241 Ala. 455, 3 So.2d 27, 29, held that what might be termed an ordinary pin ball machine was a gambling device within the terms of our statute. During the course of its opinion the court observed:

"We take judicial knowledge of conditions generally known of all men, that prevailed in this State prior to the passage of this act and evidently inspired the same. What were known as 'slot machines', 'pin ball machines', 'one armed bandit' machines and various other mechanical devices and inventions were distributed throughout the State, stimulating the gambling spirit in the citizens and corrupting the morals of the people.

"It was to curb this evil that the 1931 Act was passed. A question similar to that here presented was before the Florida court, and the following observation taken from the opinion of that court in Eccles v. Stone, 134 Fla. 113, 183 So. 628, 631, is applicable here:

" 'It is a matter of common knowledge, of which we must take judicial cognizance, that the lure to play the slot machine had become so great as to undermine the morals of many and to lead to the commission of or the indulgence in vices and crime to procure the coins with which to play the machines.

" 'So the legislature of 1937 carried out the mandate of the majority of the people of the State, and the members their pledges to their constituency, to pass acts which would prohibit the operation of coin-operated gambling devices in this State and enacted Chapter 18143.

" 'It is also a matter of common knowledge that pursuant to the passage of that act the popular slot machine with its set of pictured wheels, its alluring jackpot and its pull lever, generally known as the one-armed bandit, faded away from the public places and immediately in the places where they had stood were set up the mechanical horse races, marble pin games and other coin-operated mechanical devices, adapted

and fit for fast, easy gambling; and it is a matter of common knowledge, of which we cannot plead ignorance, that these machines are generally used as gambling devices and that the gambling element is the principal lure which causes them to be played by the public.'

"We think it clear enough, from the language of this act, especially definition (d), that the law-making body deemed it necessary to prohibit all such machines and devices which could be operated as a game of chance, regardless as to whether there was a 'pay off' or not, in order to fully suppress the gambling evil. That this was within the police power of the State and violated no provision of the Constitution, either State or Federal, is well demonstrated in the Eccles case, supra, as well as in our own case of State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283, and is not here questioned.

"No other logical conclusion can be reached from the language of definition (d) when considered in connection with all other definitions and with the known history of the enactment. And this legislation is in harmony with the policy of this State so clearly declared as to a lottery in our Constitution. Section 65, Alabama Constitution 1901. Section 4247, Code 1923, Code 1940, Tit. 14, § 275. Try-Me Bottling Co. v. State, 235 Ala. 207, 178 So. 231."

Respondents insist that the addition of the flippers to this machine renders pure that which was illicit by making the successful operation of the machine depend on skill rather than on chance. It may be conceded that the addition of the flippers probably affords a larger scope for greater degrees of skill in the operation of the machine.

Even so, the trend of the testimony of appellants own witnesses was that long practice on the machine was necessary to acquire the skill essential to overcome chance.

We do not think that the great mass of the patronizing public has either the time, or inclination, to develop whatever latent talent they may have in this field of endeavor. It would appear therefore that as to the public in general this machine, despite the addition of the flippers, is still a game of chance.

The lower court viewed the machine upon its reception in evidence. We likewise have viewed the machine. The lower court saw and heard the witnesses testify. There was, in our opinion, sufficient proper evidence before the court to sustain its judgment. We would therefore be unjustified in disturbing the conclusions reached by the court below.

Affirmed.