310 P.2d 834

**L. C. BOIES, Sheriff of Maricopa County, Arizona, and Vernon La More, Deputy Sheriff of Maricopa County, Arizona, Appellants,**

v.

**Joseph BARTELL, Appellee.**

No. 6149.

Supreme Court of Arizona.

April 30, 1957.

————◆————

Robert Morrison, Atty. Gen., Wm. P. Mahoney, Jr., County Atty., Lawrence C. Cantor, Deputy County Atty., Phoenix, for appellants.

Shute & Elsing, Phoenix, for appellee.

PHELPS, Justice.

This is an appeal from the judgment and order of the trial court in favor of the plaintiff-appellee Joseph Bartell, and against L. C. Boies, sheriff of Maricopa County, and his deputy, Vernon La More. The appellee's suit was an action for replevin to recover certain digger machines which had been seized by the sheriff as gaming devices, and were allegedly being operated in Maricopa County in violation of the statutes of Arizona. Such statute, section 43–2701, A.C.A.1939, prohibits the use of gaming devices or machines and is now A.R.S. sections 13–431, 432 and 433, which states as follows:

"Conducting gaming—Participating therein—Penalty.—Every person who shall deal, carry on, or open, or cause to be opened, or who shall conduct, either as owner, proprietor or employee, whether for hire or not, any game of faro, monte, roulette, lasquenet, rouge et noir, rondo, vingt-un, or twenty-one, poker, stud poker, draw poker, bluff, fan tan, thaw, seven and one-half, chuck-a-luck, blackjack, 'pan-ginki,' or any other similar game whatsoever, played with cards, dice, or any other device, and *every slot machine, punchboard, or machine of like character,* whether the same be played for money, checks, credits or any other representative of value within the state of Arizona; and every person who

shall participate in any of the above-enumerated games dealt, carried on or opened or caused to be opened by any other person in the state of Arizona, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than one hundred dollars ($100), nor more than three hundred dollars ($300), or by imprisonment for not more than six (6) months, or by both such fine and imprisonment." (Emphasis supplied.)

The uncontroverted facts show that on March 24, 1955, deputy sheriffs entered three different business locations in Maricopa County, near the city of Phoenix, and deposited coins in and operated and manipulated the machines in question. They thereafter seized the machines and transported them to the sheriff's office storage room. The property allegedly wrongfully seized and possessed by the sheriff was described as two Superscope Digger Amusement Devices and one Mutoscope Digger Amusement Device.

At the trial (which was without a jury) these devices were also referred to as "Claw" machines and "Crane" machines. Expert witnesses testified as to the mechanical operation of the machines, and stated their opinions as to the relative elements of chance and skill in the mechanical operation of these devices. The testimony developed that a "digger" machine is a mechanical machine or device. It is a

rectangular cabinet, the upper part of which is encased in glass. On the base of the glass covered upper part, lying on loose pieces of candy, like gravel, are placed metal figurines of animals or other objects. These figurines have parts or protuberances or "holds" which, if grasped by the claw in a particular manner, will enable them to be lifted from the various positions in which they are "dressed" (placed or arranged) in the candy bed. Suspended above this base is a miniature crane or boom from which a claw hangs. The player of the machine decides which article he wishes to pick up and how he will go about it. In so doing he may use the setting on an indicator in the back of the case. The markings of the indicator are designed to show the relative position (back or front) of the place where the claw will fall from the different positions to which the boom can be moved according to pattern. The boom is connected to a control wheel so that the player can move it to the right or left with a synchronized movement of forward or backward to his selected position, or, cause the claw to swing into an area not regularly followed by the predetermined mechanical pattern of the machine. This predetermined pattern is called the "star pattern." After the boom is placed in the desired position by moving it to the right or left by means of the only mechanized control on the device, the insertion of a coin starts the operation of the mechanism connected to the boom; it then swings and the claw drops. If an article is sufficiently grabbed by the claw it is picked up and deposited in a chute which delivers it to the player as a prize. The player has no mechanized control of when the claw opens or when it closes nor of the precise spot on which it will fall. Unless the digger is made to swing pendulum-wise it will automatically fall on the spot mechanically predetermined by the machine.

Witness Dr. E. Paul De Garmo, a professor of Industrial and Mechanical Engineering of the University of California, testified by deposition that, in 1939 he had made various tests with machines similar to those in controversy; that he had recently played similar machines; that his tests indicated to him that the results of the operation of the machines were determined predominately by chance because the boom follows a predetermined star pattern; the claw is not designed to pick up smooth objects; and the level of the candy and placement or dress of the objects in the candy bed affect the degree of success in picking up the figurines.

Witness Joseph Bartell testified that he owned and manufactured these digger machines in the Phoenix area; that he operated them for profit; that when players won figurines they could be sold to him or the owner of the business establishment where the machines were located, for $1;

that the manner of dressing the machine can determine the degrees of success; that in his opinion the average player would *win once in twenty-five attempts* and then testified that, the game is 90% skill. The record also shows that he played the machines in the court room without success.

Dr. Paul L. Kirk, professor of criminalistics of the University of California, testified that he examined the machines in evidence; that he had extensively tested a similar machine in 1951, using rubber balls in place of the figurines for many of the tests; that rubber balls were easier to pick up because of their size and shape and grip; that the manner of dressing the machine affected the degree of success because of (1) the various holds; (2) the mechanical star pattern; (3) the level of the candy bed; that objects could be picked up by causing the claw to swing like a pendulum outside the star pattern; that some people are more skillful in this endeavor than others; that judgment, coordination and dexterity are necessary elements of this skill; that with practice a player could become skillful but to do so would require many weeks and the player would have to play frequently enough to retain his skill. He said he was in no position to say what the average person would do; that in his opinion his special tests rule out all possibility of chance being a major factor; and that, although there is some element

of chance he believed skill outweighs chance from 8 to 10 times.

Witness Leon C. Sidebottom, a California digger machine manufacturer, expert operator and lessor, testified that he has been in the business for seventeen years; that he manufactures the "Sidebottom" machine (a machine similar to those in evidence in this case); that the machine is designed and operated for profit; that the manner in which a machine is dressed affects the degree of success; that in his opinion skill predominates over chance; and that the tougher a machine is set up (dressed) the more skill it takes to take things out. The record also discloses that the witness played the machine in the court room five times and that he was successful twice.

Two witnesses (deputy sheriffs) testified for the defendant that they had separately played the machines in evidence prior to seizing them; that though each had played the machines 10 times the entire only success was as a result of the first coin experiment resulted in only one win. The played without any manipulation or presetting of the locator. This was certainly by pure chance.

A careful analysis of the above evidence shows that the chief witnesses agree that chance is an important element of the operation of a digger machine, but they disagree as to the question of whether skill

or chance predominates in the operation of the device. The evaluation of the witnesses for appellee is based principally upon their knowledge of the mechanism of a digger machine and upon observation of players largely of long and continuous experience.

Appellants argue and appellee agrees that, the sole question presented upon this appeal is whether there is substantial evidence in the record to support the trial court's judgment. It is our view that such judgment is not supported by the evidence for the reasons we will hereinafter point out.

Appellants argue that section 43–2701, supra, prohibits the use of gaming machines and they argue that all the evidence points to the fact that the digger machines in question are gaming devices. A specific provision of this statute makes it a misdemeanor for a person to carry on or participate in the games specified in the statute, "or any similar game whatsoever played with cards, dice or any other device, and *every slot machine, punchboard, or machine of like character.*" The question here is: Does a digger machine fall within the category of gaming machines above denounced? We hold it does. In Engle v. State of Arizona, 53 Ariz. 458, 90 P.2d 988, 993, we said:

"* * * A game of chance may be defined as any sport or amusement involving physical contest, whether of man or beast, determined entirely, or in the main part, by mere luck, and in which judgment, skill or adroitness have no place or else are thwarted by chance. State v. Gupton, 30 N.C. 271; Rex v. Fortier, 13 Que.K.B. 308, 7 Can.Cr.Cas. 417. It is the character of the game and not the skill or want of skill of the individual player which determines whether the game is one of chance or skill. *The test is not whether it contains an element of chance or an element of skill, but is chance the dominating element which determines the result of the game.* * * *" (Emphasis supplied.)

The test laid out by the above quote can best be resolved as follows: A game of chance is a contest wherein chance predominates over skill.

Of course this definition is only relative to the element of chance in the more important definition of gambling. Generally, it may be said that the elements of gambling are payment of a *price* for a *chance* to gain a *prize*. Engle v. State of Arizona, supra, also, see Westerhaus Co. v. City of Cincinnati, 165 Ohio St. 327, 135 N.E.2d 318. In the instant case we have the *price* because a coin is required to operate the machine and we have the *prize* in that the figurines are offered as a *prize*. It is conceded by both parties that we also

have the element of *chance*. The only question therefore, is whether the element of chance predominates over skill in the operation of digger machines by average persons.

Since our court has adequately defined chance in the Engle case, supra, we need only determine whether the lower court properly applied the test of the Engle case, supra, to the case at hand. We are of the view it did not.

The judgment of the trial court is not supported by the evidence on the question of whether skill predominates over chance although witnesses Bartell, Kirk and Sidebottom all expressly testified that skill was predominant. These witnesses gave as the basis of their opinion the results of various tests or experiences they themselves had had with machines of this type. The evidence shows the tests by Dr. Kirk were not truly indicative of the skill required. In the first place, the use of rubber balls eliminated one of the elements of chance. The surface of the balls was not comparable to any of the prizes placed in the machine, in that they were not slick, and the balls used were small enough to fit easily into the claw and were captured regardless of their position. In contrast, the metal figurines were larger and more slippery with irregular surfaces that could only be grasped by contact with the so-called "holds" which could only be reached by the claws in the event the figurine was placed or maneuvered into a receptive position.

It is extremely difficult to understand how Dr. Kirk arrived at his conclusion that skill preponderated 8 to 10 times over the element of chance in playing the digger machine, which he said was very similar to the machines here involved. There are no facts upon which a comparison between the quantum of skill and that of chance can be made. Nothing could be more dissimilar than the tests conducted in the two classifications of chance and skill. It appears to us that a fair test would have compelled the same tests to be applied to the same kind and number of articles the same number of times. How can a fair comparison be otherwise reached. The same tests were not applied in any instance. We conclude therefore, that Dr. Kirk's testimony as to the preponderance of skill over chance is of no probative value.

It is our view in the light of all of the evidence in this case that, chance obviously predominates over skill in playing these machines. The element of chance may be greatly increased (1) by the way the articles are arranged on the floor of the machine or it may be lessened thereby. This is in the exclusive control of the owner or lessee; (2) by the level of the candy on the floor; (3) by the length of the chain to which the claw is attached, if it is either too long or too short the chance is increased; (4) by the shape of

the figure sought to be captured; (5) by its size; (6) by the slickness of its surface; (7) by the number of "holds" or protuberances on it; (8) by the placement of the "holds" with relation to the machine; (9) by its close proximity to other articles blocking approach to the "hold"; (10) location of article with respect to star pattern of machine; (11) by restricted area of star pattern which machine automatically reaches after boom placed by movement to right or left; (12) by having only one control; (13) by lack of control of claws outside star pattern except by a pendulum or arc swing of the boom brought about by some maneuver of the control wheel which cannot be done with precision. To assert the fact to be otherwise is not supported by the evidence; (14) by the three-prong design of the claw which form no contact with each other and which must fall over the object in a particular manner in order to grab it; (15) by the slickness of the prongs constituting a hazard in attempting to capture the prize; (16) by the fact that the player has no control over the speed of the boom in the process of lowering or raising it; (17) by having no control over the opening or closing of the claw; (18) by the fact that unless the boom is changed to a pendulum or arc swing, the boom falls to the floor at or near the point predetermined by the setting before dropping the nickel into the slot. As a result of the above factors there are yet other ele-ments of chance present: (a) If the claw strikes the prize it may not grip it; (b) if it does grip it the article may drop off without moving the article; (c) if it does lift it the article may drop off before reaching the chute; (d) it may be knocked off by some other article lying close to it.

The primary elements of skill involved in the operation of the machines as disclosed by the evidence, is the ability of experts to manipulate the "control wheel" (designed to move the boom to the right or left) in such a manner as to put the boom either in a pendulum or arc swing, carrying it to areas outside the predetermined star pattern and, with some claimed degree of precision cause the claw to fall on an otherwise inaccessible figurine or object.

All the courts in digger machine cases in passing upon the question of whether skill or chance predominates in playing such machines, evaluate the evidence from the standpoint of the average player.

■ Our gaming statutes are an expression of the public policy of this state relative to the protection of the general public and not experts or a class of people with latent skill in the manipulation or operation of mechanical devices. This qualification of the gaming test has been succinctly stated by the Alabama Court of Appeals in the case of Club 400 v. State, 78

So.2d 819, 820. The court held that a baseball machine which required frequent practice for a member of the general public to operate successfully was a game of chance. The court stated:

"The evidence showed that for a player to acquire skill in the operation of the game requires frequent practice, therefore, the language used by Judge Harwood, in White v. State, 35 Ala. App. 617, 51 So.2d 550, 554, is applicable: 'We do not think that the great mass of the patronizing public has either the time, or inclination, to develop whatever latent talent they may have in this field of endeavor. It would appear therefore, that as to the public in general this machine (and we interpolate, despite the absence of hazards), is still a game of chance'."

This differs from golf, baseball and similar games where the skill is exclusively in the control of the player unincumbered by any hazards or mechanical devices.

Another important decision on this point is a U. S. District Court case from Nevada, Tooley v. United States, 134 F.Supp. 162, 166 (June, 1955), wherein the court had before it the question of whether a digger machine was a "gaming device" under a federal excise tax statute requiring a $250 tax where the operation of the machine was subject to "the element of chance." Although in that case the test for determining whether a digger machine is a "gaming device" differs from the test set forth in the Engle case, supra, the decision is important to review because of three principal reasons, to-wit: (1) the digger machines in question were "Sidebottom" machines which were shown to be similar in operation and construction to the devices which are the subject of the instant suit; (2) Mr. Sidebottom and Dr. Kirk, the two principal witnesses in that case, were also chief witnesses in the instant matter; (3) the court found as a finding of fact, *the element of chance preponderates over the element of skill in the playing of the machine,* after explaining that it needed only find that there be a substantial element of chance for the devices to be classified as "gaming devices" under the statute involved. These three points of similarity make the following comment on the evidence by that court more than enlightening and especially analogous to the case at hand on the question of the skill of an average person. We quote:

"The machine in question was intended to be played by the average player and should be evaluated from that standpoint and not from the approach of the so-called expert. No one will question the fact that craps, twenty-one and roulette are games of chance with percentages heavily loaded in favor of the house, yet there are some expert players, cross-roaders,

who can outplay and break the house even on these admitted gambling games. But that does not convert these games from games of chance to games of skill. Neither, do we think does the fact that Mr. Sidebottom, who devised and built the machine, had appreciably better playing results than the average player convert the machine into an instrument of skill. Certainly it does not so far as average players are concerned. He plays a few times and moves on. He has neither the time nor the inclination to spend a couple of years studying the idosyncrasies of the machine.

\*   \*   \*   \*   \*   \*

"\*   \*   \* The operator [owner] has complete control over the placement of the figures and in our opinion this alone would nullify, if not eliminate, the element of skill. Certainly, if the mechanical operation of the machine was always identical, and if the figures were similar in size and shape, and if they contained the same holds, and the holds were in each instance in the same places, and the cord or cable suspending the claws from the boom were always the same length, then it would appear that the average player might within a reasonable period of time, by assiduous application to the problem, become more proficient as time went on. But such is not the case here. *A variation in any one of these conditions would, and does, create a new hazard with which the player must cope. The chance element preponderates over the the element of skill.*" (Emphasis supplied.)

The evidence on this point is clear and undisputed. Dr. Kirk, on direct examination, testified as follows:

"Q. Can an individual who has average judgment and average coordination and average dexterity become a skilled player by practice? A. I am sure he can, but I am also sure that it will take a good bit of practice with some players. I think I could practice on this machine quite a long time before I would be very skilled. Chiefly, I wouldn't have the patience to do it, rather than the ability. If I had nothing else to do, I think I could become skilled, but I wouldn't stick with it long enough. It takes a lot of practice."

Witness Bartell, on recross examination, testified as follows on this point:

"Q. Did I understand, Mr. Bartell, that, according to your best judgment, the average player would win one in twenty-five times? A. I would say that."

In addition to the clear facts of this case, we have found that there are other decisions which have directly held that *digger*

machines are "gambling devices" and that chance predominates over skill. An analysis of these digger machine cases follows: In Boosalis v. Crawford, 69 App. D.C. 141, 99 F.2d 374, 376, the court of appeals of District of Columbia was faced with the problem of whether a digger machine was a gambling device under the code of the District of Columbia. After reviewing the degree of manipulation and control afforded to the average player, the court stated:

" * * * Under these circumstances, no reasonable juryman could reach a conclusion that these machines were not gambling devices within the meaning of the statute. Even giving the appellant the benefit of an assumption that the evidence establishes that skill played a part in suspending the claw in the vicinity of a desired article, no other conclusion could reasonably be reached than that, on the whole of the operation of the machines according to directions, *chance predominated over skill or was present in such manner as to thwart the exercise of skill. Under such facts, the device operates as a game of chance."* (Citing cases.) (Emphasis supplied.)

In United States v. 10, More or Less, Digger Machines, 109 F.Supp. 825, 827, the district court in determining whether a digger machine is a gambling device under a forfeiture statute applying the test that only an "element of chance" is required, stated:

" * * * Obtaining a prize depends on many things beyond the control of the operator, but within the control of the exhibitor. To mention a few: The depth in the gravel to which the prizes are placed; the shape of the prizes and their location on or in the bed of gravel; and the relation to other prizes. * * *

[This statement is fully supported by the evidence in the instant case]

\* \* \* \* \* \*

"This device impresses this Court as a machine, subject to and cunningly equipped, providing just enough control in the customer to entice those who attend carnivals and street fairs to try to get something for comparatively nothing, under the illusion that it is a game of skill and not one of chance. *They are on display for the enticement, not of experts with years of experience, but for the usual carnival frequenter.* They are in fact and for all practical purposes, i. e. profit to owner and loss to operator or public, a game of chance.

"The statute here is novel. It is doubtful if it requires that chance predominate over skill. The language is —' * * * when operated it may de-

liver, as the result of the application of an element of chance, any money or property'. * * *

"That the device has 'elements' of chance, we think too plain for argument. *It is further our conclusion that chance predominates over skill."* (Emphasis supplied.)

See, also, United States v. 24 Digger Merchandising Machines, 8 Cir., 202 F.2d 647. We concur in this view and it is interesting to note that no cases are cited from appellate courts holding that skill predominates over chance in the operation of digger machines.

Another interesting case from the standpoint of the similarity of the name of digger machine involved and the holding of the court, is the New York case of International Mutoscope Reel Co. v. Valentine, 247 App.Div. 130, 286 N.Y.S. 806, 809, affirmed 271 N.Y. 622, 3 N.E.2d 453. The court went further than necessary under the statute requiring any element of chance in labeling the digger machines as gambling devices and said:

"The quoted statute is a broad one, and prohibits the manufacture or possession of slot machines or devices, 'pursuant to which the user thereof, as a result of *any element of chance* or other outcome unpredictable to him, may become entitled to receive any money, * * * or thing of value.' Observation and *inspection of the 'crane' slot machine indicates that the element of chance not only exists, but that it predominates. The court at Special Term seemed to predicate its ruling upon the theory that skill and not chance controlled the operation of the device. Needless to say, our views are entirely different."* (Emphasis supplied.)

For the reasons above stated we are of the view that in the final analysis the evidence does not support the judgment of the trial court. There can be no doubt from the evidence of this case and the supporting decisions of other jurisdictions, that digger machines are unlawful gambling devices, in that, the elements of chance clearly predominate over skill as it applies to the average person or general public.

Judgment reversed.

UDALL, C. J., and STRUCKMEYER, and LA PRADE, JJ., concurring.

WINDES, J., concurs in the result.