The question before the Court on this appeal is whether the unchallenged testimony of several witnesses, who were not professional surveyors, was sufficient for the jury to conclude that defendant engineering and survey firm was negligent in staking a survey site. Even though the law ordinarily requires expert testimony to establish the standard of care a professional person should use, we conclude that the testimony was sufficient under the facts of this case, and we affirm the judgment of the trial court.
Defendant Paragon Engineering, Inc. (Paragon), a civil engineering and survey firm, contracted with United States Fidelity and Guaranty Co., to plan, survey, and "lay *Page 275 
out" with stakes, a site to be used as a "retention basin" (holding pond), on property belonging to the Industrial Development Board of the City of Cullman (Development Board). The retention basin was needed because a change in the landscape of the Development Board's property had resulted in the flooding of adjoining property belonging to W.H. Dial.
Paragon prepared plans for the retention basin and sent a survey crew headed by George Beverly to stake out the project. After the project was staked, plaintiff Sonny Rhodes, an independent contractor, bid on the grading work to be done, was awarded the job, and signed a contract to build the retention basin "according to the plans of and as staked out by Paragon Engineering, Inc." Paragon was to certify the work following its completion by Rhodes.
After Rhodes had completed the grading work, however, Paragon's president, Thomas Hugh Gachet, refused to certify the retention basin as constructed by Rhodes because it was roughly one-half the size called for by the plans prepared by Paragon. As a result, Rhodes was not paid for the work done, and another contractor was hired to enlarge the basin.
Rhodes, in a complaint consisting of ten counts, as later amended, brought suit against Paragon and other parties. The trial court dismissed all defendants, except Paragon, at the close of Rhodes's evidence, and the case went to the jury on the count of negligence. The jury returned a verdict awarding Rhodes $14,500, plus interest. Paragon appeals from the trial court's refusal to grant its motions for directed verdict and for JNOV, or in the alternative, a new trial.
Paragon asserts that this case should not have gone to the jury, because, it says, Rhodes failed to prove a prima facie case of professional malpractice. In its brief, the appellant argues:
 "The significance of symbols appearing on fill stakes and cut stakes as opposed to grading instructions symbolically demonstrated in slope stakes and percentage ratios are the very germ of the litigation. However, such is far beyond the keen [sic] of the jury and absolutely necessitates expert testimony to not only clarify these essential points, but also to clearly explain the application of engineering tools and procedures available to and within the admitted skill of the plaintiff to explain the use of the transit and tape in establishing stations, and point locations and in determining volume the level and rod for confirming elevations and contours all are essential to an elementary understanding of the case.
 "Obviously, this is not a case where the professional's want of skill or lack of care is so apparent as to be within the comprehension of the layman and to require only common knowledge to understand it. Therefore, expert testimony was indispensable."
This Court has not previously considered the issue of the standard of care to be exercised by professional surveyors and the necessity of expert testimony to establish the appropriate standard of care. We have, however, spoken to the standard of care for the related professions of engineering and architecture. See R.L. Reid, Inc. v. Plant, 350 So.2d 1022,1027 (Ala. 1977), and Looker v. Gulf Coast Fair, 203 Ala. 42,45, 81 So. 832, 835 (1919). With respect to the surveying profession, courts from other jurisdictions have held that because a surveyor is bound to exercise that degree of care which a skilled surveyor of ordinary prudence would have exercised under similar circumstances, it is proper for a jury to know what such an ordinarily prudent surveyor would have done under the circumstances of the case. Annot., 35 A.L.R.3d 504, 506 (1971).
In Jarrard v. Seifert, 22 Wn. App. 476, 591 P.2d 809 (1979), a case where the facts are analogous to those of the instant case, plaintiffs brought suit against an architectural, engineering, and land survey firm and the members of that firm. The plaintiffs sought to recover for losses arising from the defendants' alleged negligence in staking a condominium site, which resulted *Page 276 
in the structure's encroaching on an easement. The Washington Court of Appeals held, among other things, that the trial court committed no error by allowing plaintiffs to present testimony on the standard of care in the engineering and land survey profession and stated:
 "The defendants were employed as professional engineers and land surveyors because of their superior knowledge in that field. The plaintiffs were entitled to rely on that superior knowledge and to expect that such professionals would fulfill the duty of reasonable diligence, skill, and ability." (Cite omitted.)
22 Wn.App. at 479, 591 P.2d at 812. Likewise, in Kundahl v.Barnett, 5 Wn. App. 227, 486 P.2d 1164 (1971), the Washington Court of Appeals concluded that, based on the testimony given by expert witnesses concerning the accuracy of the survey and methods employed by defendant surveyor, there was substantial evidence in the record that the defendant was negligent in his conduct of the survey.
In Parrish v. Spinks, 284 Ala. 263, 224 So.2d 621 (1969), a case which involved a malpractice action against an oral surgeon, the following rule of evidence was established with respect to medical malpractice cases where the negligence of the physician is not obvious to the layman:
 "Ordinarily, in a malpractice case, proof as to what is or is not proper practice, treatment, and procedure, can be established only by expert medical evidence. [Cite omitted.] In such a case, lack of testimony results in lack of proof of negligence and such proof is essential to establish a plaintiff's case."
284 Ala. at 266-267, 224 So.2d at 623.
Although Paragon insists that the testimony of expert witnesses was essential for Rhodes to prove negligence here, much of the evidence in the present case came from the testimony of witnesses who claimed, without any objection from Paragon at the time of their testimony, that they were knowledgeable and experienced with respect to survey practices and were able to follow the instructions appearing on survey stakes.
The law provides that a witness need not be an expert, in the technical sense, to give testimony as to things which he knows by study, practice, experience, or observation on that particular subject. White v. State, 35 Ala. App. 617, 620,51 So.2d 550, 553 (1951); Reynolds v. State, 29 Ala. App. 139, 140,193 So. 192 (1940).
Rhodes testified that he followed the stakes as set out by Paragon and stated, with regard to his qualifications, that he had been in the construction business since 1966, that he had previously built ten ponds, that he had put in sewer lines, and that he had even used a transit and laser beam to check the measurements on this project. Paragon offered no objection to Rhodes's testimony or qualifications. Also, Wayne Rhodes, his brother and an employee of his, testified that the retention basin was built just as it was staked out, and stated, without any objection from Paragon, that he had operated a bulldozer for sixteen years in projects which involved creeks, ponds, subdivisions, and other jobs where stakes were used to direct the contractor.
The following colloquy with W.H. Dial, whose qualifications and testimony also went unchallenged, and who observed the staking of the retention basin site by Paragon, is particularly instructive:
 "Q. At any time have you done any contracting business?
"A. Yes, sir.
"Q. Would you tell us when that was?
 "A. Well, I have done some contracting business in laying field lines and water lines, and building houses, and working on some commercial buildings.
"Q. Have you ever built any ponds?
 "A. Yes, sir. Built some of those for individuals and some of them was [sic] under the ASCS office of the Agricultural Department.
"* * * * *Page 277 
 "Q. During your contracting business did you ever read plans and specifications and blueprints?
"A. Yes, sir.
 "Q. Have you ever dealt with surveyors during your contracting business?
"A. Yes, sir.
"Q. Dealt with engineers?
"A. Right.
 "Q. Have you ever staked out any particular jobs yourself?
 "A. Well, yeah. When I would be working for individuals or when I was laying out houses and a few things like that. Lay [sic] out my present store building business and designed it and built it.
"* * * *
 "Q. Did you look at the work he [Rhodes] was doing there?
"A. Yes, sir.
 "Q. Was he building this according to the stakes that were out there?
"A. Yes, sir.
 "Q. About how many times did you go out there when they were working on it?
 "A. Oh, at the beginning I wasn't out there but about three — maybe four times.
 "Q. Every time you went out there could you tell if Mr. Rhodes was building that according to the stakes that were out there?
 "A. Yes, sir, he was working within the bounds of the stakes.
"* * * *
 "Q. After Mr. Rhodes had stopped working out there and you went over and looked at the pond how long did it take you to form an opinion that the pond wasn't nearly as big as it was supposed to be?
 "A. Well, I knew in the beginning after it was staked that it wasn't what it was supposed to be, but then after he finished and left. On the 4th and 17, 18, 19 [of April 1981], I spent a good bit of time them [sic] three afternoons out there spot checking and measuring — coming up to that it was less than 50 percent of the size.
"* * * *
 "Q. Now, all of these stakes that you say had [instructions for] cuts, and fills, and slopes, and such like, in your opinion did Mr. Rhodes build that pond like those stakes said to?
"A. Yes, sir."
The only challenge by Paragon to the witnesses' qualifications to testify concerning the staking of the retention basin by Paragon's surveyor, came at the close of the plaintiff's evidence and at the close of the defendant's evidence, by Paragon's motions for directed verdict. Such objection, however, was untimely for purposes of preserving any error for review by this Court on appeal [C. Gamble, McElroy'sAlabama Evidence, § 426.01 (3) (3d ed. 1977); 75 Am.Jur.2dTrial, § 164 (1964)], unless, of course, the testimony regarding Paragon's negligence was incompetent as a matter of law.
Ordinarily, the standard of care to be exercised by a professional surveyor could be established only by an expert witness; but because the record shows the witnesses were able to give testimony which would aid the jury in deciding the ultimate question of fact, we consider the non-expert evidence admissible.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur. *Page 278